## Eljizi v. Dorney Park Coaster Co.

C.P. of Lehigh County, no. 92-C-2322.

*Vanessa M. Nenni,* for plaintiffs.
*Mark H. Scoblionko,* for defendant.

GARDNER, *J.,* June 19, 1996—This matter is before the court on the motion of defendant for reconsideration of defendant's motion for partial summary judgment filed December 11, 1995. For the reasons expressed below, we deny the motion.

This is an action for personal injuries allegedly suffered by plaintiff Aref Eljizi as a patron on the "Hercules" roller coaster ride at defendant amusement park on August 18, 1991. Plaintiffs allege, in part, that the injury was caused by the defective manufacture and design of the seat belt on the ride.

In a previous motion for partial summary judgment with respect to plaintiffs' claims asserted on a theory of strict liability, defendant amusement park argued, in part, that a defective seat belt cannot be the subject

of a strict liability or products liability action. Defendant argued that because plaintiff purchased a service, not a product, when he purchased a ticket to ride the roller coaster, he cannot recover on a strict liability or products liability theory.

On December 1, 1995 the undersigned denied defendant's motion for partial summary judgment. We ruled, in part, that as a park patron Mr. Eljizi purchased the use of these products (the roller coaster and seat belt) to use for his enjoyment in a ride. We also ruled that a user does not have to have purchased the product to have a strict liability cause of action. We incorporate here the reasons expressed in footnote 1 to our order of December 1, 1995.

In its motion for reconsideration of that ruling, defendant claims that the recent opinion of the Supreme Court of Pennsylvania in *Cafazzo v. Central Medical Health Services Inc.*, 542 Pa. 526, 668 A.2d 521 (1995) makes it "abundantly clear that this honorable court misinterpreted applicable Pennsylvania law in ruling that a viable strict liability claim could be asserted against defendant in the context of this action." We disagree.

In *Cafazzo* plaintiff underwent surgery for implantation of a mandibular prosthesis. He sued the physician who performed the surgery and the hospital where the operation took place. He argued that they should be held strictly liable as having "provided, sold or otherwise placed in the stream of commerce" the defective implant. The Supreme Court affirmed the granting of a demurrer. It ruled that the doctor and the hospital were not sellers of the prosthesis, rather they were providers of medical services. The court also reasoned that medical services are significantly different in kind

from the retail marketing enterprise at which section 402A of the Restatement (Second) of Torts is directed.

First, *Cafazzo* is distinguishable because it concerns whether a hospital and a physician can be held strictly liable under section 402A of the Restatement for defects in a product provided incidental to the provision of medical services. The instant case involving an amusement park ride obviously does not concern the provision of medical services, or remotely related services.

Second, the substance of the Supreme Court's opinion makes it clear that it is intended to apply only to cases involving professional medical services with the incidental sale of medical products, not to other cases involving other services. In *Cafazzo* the court extensively reviewed the prior case law of other states regarding the sale of products incidental to the provision of medical services.

The Supreme Court noted that the medical services cases from other states which have held that strict liability does not apply, have been labeled by some as a "service exception" to section 402A. The court indicated that such a characterization is misleading because it presupposes that the distinction drawn where medical personnel are involved, is an artificial one. The cases from other states make clear, however, "that the provision of medical services is regarded as qualitatively different from the sale of products." *Cafazzo, supra* at 532, 668 A.2d at 524.

The meaningful distinction is based on a difference of primary function. That is, the medical providers "could not be liable under a theory of strict liability because (they were) not in the business of selling the (implant), its use was only incident to [the doctor's] primary function of providing medical services, and the medical services could not have been rendered with-

out the use of this product." *Id.* at 533, 668 A.2d at 524-25, quoting *Podrat v. Codman-Shurtleff Inc.,* 384 Pa. Super. 404, 410, 558 A.2d 895, 898 (1989), *alloc. denied,* 524 Pa. 609, 569 A.2d 1368 (1989). The Supreme Court further explained that this distinction is made clearer by the fact that case law also supports the application of section 402A "where what has been provided is not medical service or products connected with diagnosis and treatment, but rather materials related to mechanical or administrative functions" such as hospital gowns, or defective products sold in the hospital gift shop. *Cafazzo, supra* at 533, 668 A.2d at 525.

There is nothing in the *Cafazzo* opinion to indicate that the court was also ruling that the provision of services in general is excluded from section 402A or, more specifically, that a defective seat belt on a roller coaster ride in an amusement park could not be the subject of a strict liability action. Moreover, unlike the medical situation, we find that the amusement park is more akin to marketing its product, that is its roller coaster, including the component parts, its roller coaster car and the seat belt which is part of the car.

Finally, we find persuasive the analysis of the Court of Common Pleas of Dauphin County, en banc, in *Coopersmith v. HERCO Inc.,* 116 Dauph. 1 (1996). In *Coopersmith* plaintiff was injured while riding on an allegedly defective raft on a waterslide ride at HersheyPark amusement park.

The *Coopersmith* court concluded that an amusement park could be interpreted to be a "seller" or "supplier" under Restatement (Second) of Torts §402A, given the broad application of the term "supplier." The common pleas court noted that the term has been defined to include "anyone who, as a supplier, enters into the business of supplying the public with products which

may endanger them." *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 371-72, 562 A.2d 279, 281 (1989). Pennsylvania courts include in the definition of "seller" "all suppliers . . . in the chain of distribution, whether retailer, partmakers, assemblers, owners, sellers, lessors, or any other relevant category . . . ." *Burch v. Sears, Roebuck and Co.*, 320 Pa. Super. 444, 456, 467 A.2d 615, 621 (1983).

This broad interpretation is needed to effectuate the policy behind strict liability, which is to protect the public against defective products. The Supreme Court stated:

"What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease, or bailment, for use and consumption by the public. . . . Where the fundamental principles are applicable, the imposition of artificial distinctions will only frustrate the intended purpose." *Coopersmith, supra* (quoting *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 367, 372 A.2d 736, 738-39 (1977)).

We agree with the Dauphin court's conclusion that defendant is in the business of supplying the consuming public with rides on its amusements, specifically in our case, a ride on the Hercules which involved putting plaintiff in possession of a roller coaster car with a seat belt which was allegedly defective. Defendant thus might be considered the supplier of a product which could endanger the public. *Coopersmith, supra* at 4. We note that the only appellate decision cited by defendant concerning amusement parks, *Wood v. Conneaut Lake Park Inc.*, 417 Pa. 58, 209 A.2d 268 (1965), *cert. denied*, 382 U.S. 865, 86 S.Ct. 132, 15 L.Ed.2d 103 (1965), was decided before our Supreme Court rec-

ognized strict liability recovery in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).

The Supreme Court of Pennsylvania in *Francioni, supra* at 368-69, 372 A.2d at 739-40, sets forth a four-prong test to determine whether strict liability should be extended to lessors. Those factors are: (1) whether the defendant is the only member of the marketing chain available to the injured plaintiff; (2) whether the imposition of strict liability would serve as an incentive to safety; (3) whether the defendant is in a better position than the consumer to prevent the circulation of defective products; and (4) whether the defendant can distribute the cost of compensating for injuries resulting from defective products by charging for it in the business. In applying those factors to this case, we find that all four factors support our previous decision that a strict liability action is appropriate against an amusement park where a defective seat belt on one of the rides is alleged.

Prior to oral argument defendant filed a supplemental brief on February 20, 1996. The brief directs the court's attention to a recent opinion of the Court of Common Pleas of Northampton County, *Benitez v. Easton Area School District,* 50 North. Co. L.Rep. 5 (1996). Defendant contends that *Benitez* has a direct bearing on the pleading issue originally argued to this court in the initial motion for partial summary judgment which defendant is now asking the court to reconsider.

In the original motion for partial summary judgment defendant argued that plaintiffs failed to allege a products liability or strict liability cause of action, and that the complaint is defective because the negligence and products liability claims are contained in a single count. However, in its motion to reconsider, defendant sought "reconsideration of, and further argument on the de-

fendant's motion for partial summary judgment, limited to the question of whether or not this court's opinion and order of December 1, 1995 are correct in light of the Supreme Court's opinion in *Cafazzo, supra.*"

Accordingly, we granted defendant's motion for reconsideration only to determine the effect of *Cafazzo* on our ruling that strict liability could apply to a defective seat belt claim regarding a ride on a roller coaster in an amusement park. The motion to reconsider was briefed and argued on that limited basis. Therefore, we will not address in detail arguments concerning other aspects of our December 1, 1995 decision.

However, were we to consider *Benitez* on the merits of the original pleading issue, our outcome would be the same. In *Benitez* minor plaintiff sued her school district and the manufacturer of playground equipment for personal injuries sustained when she fell off the monkey bars at her elementary school. The Northampton County Court held that plaintiff in her complaint did not assert a products liability claim, because her complaint alleged that defendant manufacturer *negligently* performed its responsibility to maintain the monkey bars in a reasonably safe condition. There was no averment in the complaint that the monkey bars were defectively designed.

We find that *Benitez* is not controlling in the case before this court. In paragraph 7 of the complaint in the instant case, plaintiffs allege that "the seat belt was improperly adjusted by . . . defendant, or *was defective* in some other manner causing it to become too loose as the ride progressed." (emphasis added) In paragraph 8 plaintiffs allege that "[a]s a result of *the defective* or improperly adjusted *seat belt,* the plaintiff Aref Eljizi was [injured]." (emphasis added) Therefore, unlike *Benitez,* the complaint in the instant case

clearly alleges both a defective seat belt and negligent adjustment of it. Accordingly, our original decision that plaintiffs sufficiently alleged a products liability action, was correct.

For all the foregoing reasons, we deny defendant's motion to reconsider our December 1, 1995 order.

## ORDER

Now, June 19, 1996, upon consideration of motion of defendant for reconsideration of defendant's motion for partial summary judgment, filed December 11, 1995, and response of plaintiffs to defendant's motion for reconsideration of defendant's motion for partial summary judgment, filed on December 29, 1995, after oral argument held March 22, 1996, and upon consideration of the briefs of the parties, it is ordered that the motion for reconsideration is denied.